*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0179p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MORGAN UKPABI,

　　　　　　　　　　　*Petitioner,*

　　*v.*

No. 06-4028

MICHAEL B. MUKASEY, Attorney General,

　　　　　　　　　　　*Respondent.*

On Petition for Review from the
Board of Immigration Appeals.
No. A79 334 237.

Argued: March 13, 2008

Decided and Filed: April 17, 2008[*]

Before: CLAY and McKEAGUE, Circuit Judges; BOYKO, District Judge.[**]

---

## COUNSEL

**ARGUED:** Scott A. Keillor, Ypsilanti, Michigan, for Petitioner. John C. O'Quinn, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Scott A. Keillor, Ypsilanti, Michigan, for Petitioner. W. Manning Evans, Mark C. Walters, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

---

BOYKO, District Judge. Petitioner, Morgan Ukpabi, seeks review of an order of removal, issued following the denial by the Immigration Judge ("IJ") of Petitioner's request for a continuance to await the outcome of a second Visa Petition ("Form I-130") filed by Petitioner's third wife. The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's decision. Petitioner appeals the IJ's denial of his motion for a continuance and the BIA's summary affirmance.

---

[*] This opinion was originally issued as an "unpublished opinion" filed on April 17, 2008. On May 5, 2008, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Christopher A. Boyko, United States District Judge for the Northern District of Ohio, sitting by designation.

The appeal is not well-taken. Petitioner has failed to demonstrate the IJ abused her discretion or that her decision violated either the Due Process Clause of the United States Constitution or international law. Accordingly, we **AFFIRM**.

**I**.

Petitioner is a native and citizen of Nigeria who was admitted to the United States as a non-immigrant visitor for business on February 23, 1999. Petitioner was apparently married in his native Nigeria. Once here, he married a United States citizen named Robin L. Chateau — a union which purportedly ended in 2003. Later, he married a United States citizen named Andrea Blakely. Petitioner was originally authorized, by his non-immigrant business visa, to stay in this country for three months; and he overstayed that authorized period. A Notice to Appear, dated November 22, 2002, was issued to Petitioner by the United States Immigration and Naturalization Service ("INS").[1]

On or about March 21, 2001, Petitioner submitted an Application to Register Permanent Resident or Adjust Status (I-485) to the INS, based upon his marriage to Robin L. Chateau, an American citizen. In order to justify adjustment of status, the marriage to the United States citizen must be valid and *bona fide*, i.e., the bride and groom must have intended to establish a life together at the time they were married. In April of 2002, the INS sent a request to Ms. Chateau for proof that Petitioner's first marriage had been terminated under the laws of Nigeria. Six months later, Ms. Chateau responded that Petitioner had no further documents regarding the prior marriage, and that her trust in Petitioner "is gone and so is my Petition." After the withdrawal of the Visa Petition was confirmed, the Notice to Appear, charging Petitioner with removability, was prepared and mailed. Due to some discrepancies in the agency's records, the notice was most likely mailed to an outdated address. A scheduling notice, setting a hearing date of August 31, 2005, in immigration court, was sent to 5745 Parker St., Detroit, Michigan. Petitioner failed to appear at the hearing and he was ordered removed *in absentia*.

On March 31, 2005, Petitioner executed a new application to adjust status (I-485), based on his third marriage to a U.S. citizen named Andrea Blakely. Ms. Blakely signed a Visa Petition on her husband's behalf the following month. She represented that she and Petitioner had lived together since December 2002 at 20443 Binder, Detroit, Michigan; that his previous marriage to Ms. Chateau ended in March of 2003; and that she and Petitioner married in August of 2003. The new Visa Petition and adjustment application were filed with USCIS on April 25, 2005; and Petitioner was directed to appear on October 25, 2005 for an interview. At the interview, Petitioner was arrested and taken into custody because of the previously-issued *in absentia* removal order. Shortly thereafter, Petitioner moved to reopen immigration court proceedings, claiming he had not received notice of the August 31, 2005 hearing date. The motion was granted; and a new hearing date was set for January 5, 2006. In the meantime, Petitioner remained in custody.

While these events transpired, USCIS notified Ms. Blakely, on December 20, 2005, of its intention to deny the Visa Petition she had filed on Petitioner's behalf. (Notice of Intent to Deny or "NOID"). Ms. Blakely was allowed sixty days, or until February 20, 2006, to respond. A copy of the NOID was sent to counsel for Petitioner. In support of the intent to deny, the government noted the following:

> (1) Although several individuals stated Petitioner's relationship with Ms. Blakely began in February of 2002, Petitioner appeared for an interview at the INS with his second wife in March of 2002;

---

[1]On March 1, 2003, service and benefit functions of the INS transitioned into the Department of Homeland Security as the U.S. Citizenship and Immigration Services ("USCIS").

(2) Neither Petitioner nor his second wife amended the record of his address, which showed a Parker Street address, even though in March of 2002, they were living at a Burgess Street address;

(3) Documentation offered by Petitioner did not support the contention he was part-owner of a business with his third wife;

(4) Petitioner and his third wife filed separate income taxes, but purportedly amended to file jointly just days before their October 2005 interview with USCIS;

(5) Ms. Blakely waited almost two years after the marriage before filing the Visa Petition on Petitioner's behalf;

(6) The couple provided "minimal documentary evidence" supporting the conclusion they married with the intention of establishing a life together.

At the January 5, 2006 immigration court hearing, Petitioner admitted the allegations in the Notice to Appear and conceded removability as a visa "overstay." The government provided the IJ with a copy of the NOID sent to Petitioner's third wife. When Petitioner sought a continuance and stated his intention to seek adjustment of status, the IJ asked if the Visa Petition had been approved. The IJ commented that it appeared approval would be unlikely, and found no basis to continue the case. The IJ remarked further that Petitioner had not "offset" the factors contained in the NOID; that she would not continue her hearing awaiting an I-130 adjudication while Petitioner was in custody; and that she would not address the issue of bond. The IJ did, however, allow one week for Petitioner and his counsel to discuss the possibility of pursuing other relief. On the date of the next hearing, Petitioner submitted a "memorandum supporting request for continuance," asserting he was appealing the denial of bond and that his third wife had submitted her rebuttal to the NOID.

At the hearing of January 12, 2006, the government asserted its opposition to a continuance and referenced concerns about Petitioner's prior marriages. Petitioner objected to consideration of the NOID, and to statements concerning the prior Visa Petition, which had been withdrawn.

The IJ remarked, in her oral decision, that she initially denied the request for continuance because Petitioner had not sufficiently overcome the findings in the NOID. However, she acknowledged receipt of Petitioner's supporting memorandum, which relied upon *Matter of Velarde*, 23 I & N Dec. 253 (BIA 2002), for the proposition that the IJ cannot deny a continuance solely because a Visa Petition has not been approved. The IJ distinguished *Velarde* on two grounds: first, it pertains to motions to reopen and these proceedings were already reopened; and second, *Velarde* applies where, unlike here, there is *prima facie* evidence to establish a *bona fide* marriage. The IJ announced:

> . . . the Department of Homeland Security has sufficient evidence upon which it has advised . . . the United States citizen spouse [] that the immigrant visa petition on behalf of Morgan Ukpabi will be denied because there is insufficient evidence on which to base a conclusion that the parties married for the purpose of establishing a life together. Counsel has not overcome the assertions made in this.

The IJ announced further that Petitioner "has equally not established any basis on which the Court believes that a continuance in this case is merited"; and "[t]his is not a case where the Court is undertaking a 'myopic insistence upon expeditiousness in the face of justifiable request for delay.'" The IJ concluded by ordering Petitioner removed to Nigeria.

Petitioner filed an administrative appeal; and the BIA allowed additional evidence and briefing.

On June 29, 2006, the BIA adopted and affirmed the decision of the IJ, "finding the respondent [Ukpabi] removable as charged, denying the request for a continuance, and ordering him removed from the United States." A timely Petition for Review followed.

## II.

This Court has jurisdiction to review the BIA order of removal, following the IJ's denial of Petitioner's request for a continuance, under Section 242(a) of the Immigration and Nationality Act, as amended (INA), codified at 8 U.S.C. § 1252(a). Specifically, this Court held in *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 631-34 (6th Cir. 2006), that it has jurisdiction to review an IJ's denial of a motion for continuance, notwithstanding the jurisdictional bar appearing in 8 U.S.C. § 1252(a)(2)(B)(ii) which concerns certain discretionary decisions.

## III.

### A.  *Petitioner's Claims on Review*

Petitioner argues the IJ abused her discretion by denying Petitioner's motion for a continuance in order to await the outcome of a pending Visa Petition. Petitioner also argues his constitutional right to Due Process was violated by the IJ when she denied a continuance for the I-130 Visa Petition to be fully adjudicated. Moreover, Petitioner argues denial of a continuance and the order of removal violated various multilateral treaties which favor preserving family integrity.

Petitioner contends the IJ was aware of the pending I-130 Visa Petition at the hearing for the I-485 Application for Permanent Resident Status; but refused to grant a continuance to allow full adjudication of the spouse's I-130 Petition. Petitioner directs the panel's attention to *Benslimane v. Gonzales*, 430 F.3d 828, 832 (7thCir. 2006): "an immigration judge cannot be permitted, by arbitrarily denying a motion for a continuance without which the alien cannot establish a ground on which Congress has determined that he is eligible to seek to remain in this country, 8 U.S.C.§§ 1151(b)(2)(A)(i), 1255(a), to thwart the congressional design."

Petitioner further insists the continuance was denied because Petitioner was detained, and not on any substantive grounds. That is, he asserts the IJ would rather deport him than give him a bond.

Petitioner contends the IJ's reasoning was deficient; and thus, the denial of a continuance was erroneous under *Subhan v. Ashcroft*, 383 F.3d 591 (7th Cir. 2004).

According to Petitioner, the decision of the IJ is wasteful of judicial resources, as the matter could be reopened after the I-130 is adjudicated. Also, Petitioner claims his Due Process rights were violated because "it now becomes a race between getting his I-130 adjudicated and getting this case resolved."

### B.  *Standard of Review*

We review the BIA's affirmance of the IJ's denial of Petitioner's motion for continuance under an abuse of discretion standard. *Abu-Khaliel*, 436 F.3d at 634. An abuse of discretion occurs if "the denial . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007) (quoting *Abu-Khaliel*, 436 F.3d at 634 (citing *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982))).

## C.  Motion for Continuance

An IJ "*may* grant a motion for continuance for good cause shown."  8 C.F.R. § 1003.29 (2003) (emphasis added).  Finding "good cause" is crucial since a continuance, in effect, allows an alien to remain in the United States for a period of time without any defined legal immigration status.  An unreasonable continuance would thwart the operation of the statutes providing for removal of inadmissible (8 U.S.C. § 1182) and deportable (8 U.S.C. § 1227) aliens.

Petitioner conceded his removability for overstaying his original non-immigrant visa.  He also conceded his third wife's Visa Petition had not yet been granted.  The NOID, issued by the USCIS, showed it was unlikely the Visa Petition would be granted.  The evidence, rather than establishing a *bona fide* marriage, reasonably led USCIS to conclude Petitioner's third marriage was, at best, suspect.

In the recent *Ilic-Lee* decision, we faced the issue of the denial of a motion for continuance, and distinguished the Seventh Circuit opinions upon which Petitioner relies.  In particular, we relied upon our prior decision in *El Harake v. Gonzales*, 210 F. App'x 482, 489 (6th Cir. 2006): "It cannot be the case that anytime an alien files an I-485 petition or has an I-130 petition filed on his behalf, the IJ is *required* to grant a continuance.  Such a view would conflict with the discretion that the regulations explicitly provide to the IJ." *Ilic-Lee,* 507 F.3d at 1047-48.  In *Subhan*, upon which Petitioner relies, there was an abuse of discretion because the IJ offered **no** reason for denying the continuance.  In *Benslimane*, moreover, the IJ provided an arbitrary reason.  Here, however, as in *Ilic-Lee*, the government opposed the request for a continuance; and the USCIS provided evidence to the IJ of the doubtful validity of Petitioner's third marriage.  Further, Petitioner provided no evidence to the IJ the application was likely to be approved.  Where the record shows Petitioner's motion did not merit a continuance; where there is a reasonable explanation given by the IJ; where there is no showing of discriminatory intent; and where there is no departure from established policy, this Court will not find the IJ abused her discretion in denying the Petitioner's motion.  *Ilic-Lee,* 507 F.3d at 1048.

## D.  International Law

While Petitioner may be correct in arguing the United States has a policy favoring the sanctity of marriage and family, he has failed to identify any specific violation of international law in the handling of his case.  Moreover, "[i]t is the role of Congress, not courts, to ensure that immigration laws comport with family, societal, and other values." *Ilic-Lee*, 507 F.3d at 1052.

## E.  Due Process

Petitioner asserts a Due Process right to a continuance while a pending Visa Petition is fully adjudicated.  It is well-settled that whether to grant a continuance is a determination left to the broad discretion of the IJ. *Sedrakyan v. Gonzales*, 237 F. App'x 76, 80 (6th Cir. 2007); 8 C.F.R. § 1003.29 (2003).  Furthermore, we have previously rejected the Due Process argument advanced by Petitioner, holding failure to obtain discretionary relief "does not amount to a deprivation of a liberty interest" protected by the Constitution. *Abu-Khaliel*, 436 F.3d at 635 (quoting *Huicochea-Gomez v. INS*, 237 F.3d 696, 700 (6th Cir. 2001)).

## IV.

For the reasons set out above, we **AFFIRM** the BIA's affirmance of the IJ's denial of the Petitioner's motion for continuance of his I-485 adjustment of status hearing, which resulted in finding Petitioner, Morgan Ukpabi, removable as charged, and ordering him removed from the United States to Nigeria.