NOT RECOMMENDED FOR PUBLICATION
File Name: 10a0625n.06

No. 09-3685

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Sep 23, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| JUAN RAFAEL RAMIREZ-CHACON, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW FROM |
| | ) | THE BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General | ) | OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Before: MOORE and GILMAN, Circuit Judges; and RUSSELL, Chief District Judge.**[*]

**THOMAS B. RUSSELL, Chief District Judge.** Petitioner, Juan Rafael Ramirez-Chacon ("Ramirez") petitions for review of a decision of the Board of Immigration Appeals ("BIA"). The BIA affirmed the Immigration Judge's ("IJ") decision to deny Ramirez's written request for a continuance of his hearing concerning his cancellation-of-removal application and his subsequent oral request for a two-week continuance in which to prepare for his asylum and withholding hearing. Ramirez appeals the IJ's denial of his motion for a continuance and the BIA's affirmance.

For the following reasons, we **DENY** the petition for review.

---

[*] The Honorable Thomas B. Russell, United States Chief District Judge for the Western District of Kentucky, sitting by designation.

## I. BACKGROUND

Ramirez, a native and citizen of Guatemala, entered the Untied States on August 22, 1986, at Laredo, Texas without inspection. Ramirez affirmatively filed an application for asylum and withholding of removal with the former Immigration and Naturalization Service, now the Department of Homeland Security ("DHS"), on June 25, 1992. No further action was taken on that application until the proceedings now at issue.

DHS initiated removal proceedings against Ramirez by filing a Notice to Appear with the immigration court on August 28, 2006. DHS charged Ramirez as removable under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without admission or parole. The initial master calendar hearing was held on September 12, 2006, at which time Ramirez appeared pro se. At this hearing, Ramirez was granted a brief continuance to retain the services of an attorney.

Ramirez and his attorney appeared at the next hearing, which was held on November 14, 2006. At this hearing, Ramirez conceded the charge of removability, renewed his application for asylum and withholding of removal, and stated that he would be filing an application for cancellation-of-removal. Ramirez's application for cancellation of removal was due April 17, 2007, and his hearing on the application was scheduled for May 1, 2007. In order to succeed on an application for cancellation of removal, a petitioner must be able to show: 1) he had been continuously physically present in the United States for at least 10 years; 2) has been a person of good moral character during that time; 3) has not been convicted of certain specified offenses; and 4) that his removal would result in exceptional and extremely unusual hardship to his spouse, parent, or child, who is a citizen of the United States or an alien who is a lawful permanent resident ("LPR"). 8 U.S.C. § 1229b(b)(1). Ramirez asserted that his removal would result in exceptional

and extremely unusual hardship to his father, Eduvijez Ramirez. Ramirez's father was Ramirez's "sole qualifying relative for Non-LPR Cancellation of Removal."

On April 4, 2007, Ramirez requested a continuance of the hearing in order to obtain his father's medical records in support of his application for cancellation of removal. On April 11, 2007, the court issued a Notice of Hearing granting the continuance, stating that the application for cancellation of removal and supporting documents were due October 12, 2007, and scheduling a removal hearing for October 26, 2007.

On October 11, 2007, Ramirez filed a second motion for continuance of his case. Eduvijez Ramirez's medical records were also submitted at that time. The medical records of Ramirez's father presented evidence of high cholesterol, diabetes, arthritis, possible prostate issues, cataracts, potential glaucoma and thoracic degenerative disease.

Ramirez stated in support of his written motion for continuance that a vital witness, his father, was unavailable to attend the hearing or provide testimony. Ramirez explained that his father, his sole qualifying relative, was in Guatemala and had been unable to return to the United States despite his desire to return. Ramirez argued that his father's testimony was essential to establishing his father's medical condition and the extent to which Ramirez's removal would cause exceptional hardship. This motion was denied on October 12, 2007. The IJ provided his reasoning stating, "Respondent has been granted a 6 month continuance, ample time to prepare his case."

On October 26, 2007, Ramirez appeared in court for his hearing. The IJ restated his reasons for denying the requested continuance by noting that the removal proceedings had been continued at least twice and had been pending for over a year. Ramirez testified as to the whereabouts of his father in Guatemala. He stated that his father had left the Untied States to visit Ramirez's sister and

that, while abroad, his father's green card had expired. According to Ramirez, his father intended to return to the United States but was waiting for the U.S. Consulate in Guatemala to renew his green card. Ramirez provided no supporting evidence despite having asked his father for a letter. Following the testimony of Ramirez, the government moved to pretermit his application for cancellation of removal due to the fact that Ramirez had failed to prove that he had a qualifying relative. The IJ granted the government's motion on the grounds that Ramirez had failed to meet his burden of proof, although Ramirez was prepared to go forward with all other evidence of eligibility.

The IJ asked Ramirez if he wished to proceed on his application for asylum. Counsel for Ramirez asked for a two-week continuance to prepare for the asylum hearing. The IJ noted that the asylum application was from 1992 and the Notice to Appear had been filed in August of 2006. He then stated: "If you want to proceed on the application for asylum, this is your opportunity." Ramirez chose to proceed on his asylum application.

Ramirez testified regarding the basis of his asylum application, detailing abuse at the hands of police while a student protestor in the 1980s. In order to establish a claim for asylum, a petitioner must show past persecution or a well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101 (a)(42)(A), 1158(b); 8 C.F.R. §1208.13(b). During his testimony, Ramirez noted that despite his past treatment, he did not fear returning to Guatemala because the "times have changed in Guatemala." The IJ denied Ramirez's application for asylum and withholding in an oral decision, finding that Ramirez did not present evidence of eligibility for asylum and withholding of removal because he did not establish past persecution or a well-founded fear of future persecution.

4

Ramirez filed a notice of appeal with the BIA on November 19, 2007. On May 12, 2009, the BIA issued a separate opinion and affirmed the decision of the IJ.[1] The BIA found that Ramirez was "not eligible for cancellation of removal because he does not have any qualifying relatives for consideration of exceptional and extremely unusual hardship." Regarding his asylum application, the BIA also found that Ramirez "failed to demonstrate either past persecution or a well-founded fear of persecution on account of any of the five enumerated grounds in the Act." Finally, the BIA affirmed the IJ's decision to deny Ramirez's continuances, stating that "[w]e agree with the decision to deny a continuance for the reasons stated in the Immigration Judge's decision." Ramirez now appeals the decision of the BIA to this Court.

## II. ANALYSIS

### A. Standard of Review

When the BIA reviews the IJ's decision and issues a separate opinion, we review the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)). However, where the BIA has adopted the IJ's reasoning with respect to the decision on appeal, we review the IJ's decision

---

[1] The BIA concluded that Ramirez's "father was formerly a lawful permanent resident (LPR) but returned to Guatemala in 2006 and is no longer an LPR because his resident card expired." Although this conclusion does not affect the outcome of this proceeding, we note that this is an incorrect statement of law. A "Permanent Resident Card" or "green card" is merely evidence or proof of an individual's LPR status, and the Government typically issues these documents for ten-year terms subject to renewal. *See generally* U.S. Citizenship and Immigration Servs., Green Card (Permanent Residence), http://www.uscis.gov/portal/site/uscis; *see also Sharkey v. Quarantillo*, 541 F.3d 75, 80 n.4 (2d Cir. 2008) ("A permanent resident card . . . popularly known as the green card, is eventually delivered to the applicant as evidence of lawful admission for permanent residence."). The expiration of the Permanent Resident Card, then, does not indicate that LPR status itself has terminated, and although Ramirez's father's "resident card" may have expired, his father still may well be an LPR. Here, however, it appears that Ramirez did not meet his burden of proof.

5

directly. *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005). Here, the BIA adopted the IJ's reasoning while adding a comment regarding Ramirez's failure to establish good cause for a continuance; therefore, we directly review the decision of the IJ while considering the additional comment made by the BIA. *See id.* at 283.

An IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. "[W]e review the IJ's decision in order to determine whether there was an abuse of discretion." *Berri v. Gonzales*, 468 F.3d 390, 395 (6th Cir. 2006); *see also Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2005) (reviewing a denial of continuance for an abuse of discretion). In determining whether there was an abuse of discretion, "this Court must decide whether the denial . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Balani v. I.N.S.*, 669 F.2d 1157, 1161 (6th Cir. 1982) (citing *Hang v. I.N.S.*, 360 F.2d 715, 79 (2d Cir. 1966)). "When reviewing a denial of continuance, we look to the 'stated' and credited reason for the IJ's decision; we do not . . . hypothesize rational grounds upon which the IJ might have acted." *Badwan v. Gonzales*, 494 F.3d 566, 570-71 (6th Cir. 2007) (citations omitted).

### B. Motions for Continuance

Ramirez argues that it was an abuse of discretion for the IJ to deny both of his motions for continuance. First, the IJ denied Ramirez's written motion for continuance, stating: "[Ramirez] has been granted a 6 month continuance, ample time to prepare his case." Ramirez also requested a continuance at the October 26, 2007 hearing after the IJ pretermited Ramirez's cancellation of removal application and asked Ramirez if he wished to proceed on his application for asylum. This request was essentially denied after the IJ noted that the application was filed in 1992, the Notice to

6

Appear was filed in August 2006, and stated that "[i]f you want to proceed on the application for asylum, this is your opportunity." The BIA noted that Ramirez, on appeal, argued that a continuance should have been allowed as to the cancellation-of-removal hearing to allow his father to return to the United States, and that a continuance should have been granted as to the asylum and withholding claims because Ramirez expected his application for cancellation of removal to go forward and did not fully develop his application for asylum and withholding of removal. Although the BIA noted that Ramirez appealed two denials of continuances, the BIA stated as to both: "We agree with the decision to deny a continuance for the reasons stated in the Immigration Judge's decision. [Ramirez] did not establish 'good cause' for a continuance on either basis."

The IJ denied Ramirez's initial written motion for continuance by hand-writing at the bottom of the motion: "Respondent has been granted a 6 month continuance, ample time to prepare his case." Ramirez argues that this stated reason applies only to the continuation of the cancellation-of-removal hearing, not the oral request for continuance as to the asylum application. The government asserts that the IJ's "denial of the written motion for a continuance filed before the hearing was not limited to the cancellation of removal claim." The government notes that the written motion referred only to the cancellation application, but the IJ's "refusal to continue the removal proceedings signified that Ramirez was expected to appear at his next hearing and proceed with his applications for relief."

"Where a judgment is susceptible of two interpretations, it is the duty of the court to adopt the one which renders it more reasonable, effective and conclusive in the light of the facts and the law of the case." *Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co.*, 137 F.2d 871, 885 (6th Cir. 1943). "The meaning of an ambiguous judgment or order 'must be determined by what

7

preceded it and what it was intended to execute.'" *Hendrie v. Lowmaster*, 152 F.2d 83, 85 (6th Cir. 1946) (quoting *Union Pac. R.R. Co. v. Mason City & Fort Dodge R.R. Co.*, 222 U.S. 237, 247 (1911)).

The Court finds the language of the IJ's denial ambiguous because it is susceptible to two reasonable interpretations. The Court also finds Ramirez's interpretation renders the order more reasonable. Review of the record provides evidence that the IJ's written reasons for denying the continuance applies only to the application for cancellation of removal. First, following the issuance of the Notice to Appear, the IJ set a "scheduling order . . . for the filing of the 42B" application on November 14, 2006, and indicated that the "hearing in [Ramirez's] case [would] be May 1, 2007. The 42B application to which the IJ referred is Form 42B of the Executive Office for Immigration Review, which is an "Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents." And the May 1, 2007 hearing was the hearing that the IJ continued for six months. Next, at the actual merits hearing on October 26, 2007, the IJ explicitly stated that he was adjudicating "an application for cancellation of removal" and that he had "just denied a Motion to continue in this case[,] . . . stating that respondent had been granted a six-month continuation already" and was already afforded "[a]mple time to prepare his case." In essence, the IJ clarified in open court that he was denying the continuance for the cancellation application on the grounds that the IJ had already granted a continuance on that same application.

In addition, on the Notice of Hearing form for the pending hearing, the box for "removal hearing," rather than as an "asylum hearing," had been checked, clearly indicating the type of hearing that was scheduled. Furthermore, the prior continuance that was referenced by the IJ was granted to allow counsel time to gather evidence in support of the same application for cancellation of

8

removal and concerned evidence of the same element of that application, i.e., extremely unusual hardship to Ramirez's father. Finally, counsel for Ramirez's question to the IJ, "can we proceed on the cancellation application," shows that Ramirez's counsel believed that the hearing was a merits hearing concerning non-LPR cancellation of removal despite the IJ's denial of the written motion for continuance. The Court finds that the IJ's denial of the written motion, and reason provided therein, is separate and distinct from the denial of Ramirez's oral motion for a two-week continuance on the asylum application.

### i. Continuance of Cancellation-of-Removal Hearing

We must now determine whether the IJ's reason for denying a continuance of the cancellation-of-removal hearing, based upon a prior grant of a six-month continuance, was a rational explanation for the IJ's decision or was an abuse of discretion. In *Al-Najar v. Mukasey*, this Court held that "the IJ had previously granted Al-Najar's requests for continuances, and this reason alone is a sufficient basis to affirm" the IJ's subsequent denial of a further continuance. 515 F.3d 708, 717 (6th Cir. 2007) (citing *Abu-Khaliel*, 436 F.3d at 634-35). Here, Ramirez had previously requested a continuance in April 2007 to obtain documentation of his father's medical condition. This request was granted by the IJ, who continued the case for six months to October 2007. The Court concludes that the IJ did not abuse his discretion in denying Ramirez's written request for a further continuance of his cancellation-of-removal hearing.

### ii. Continuance of Asylum Hearing

As stated, counsel for Ramirez requested a two-week continuance at the October 26, 2007 hearing in order to prepare to proceed on the application for asylum and withholding of removal. The relevant portion of the transcript reads:

9

> Mr. Kreis: Would it be possible to get a two-week continuance just to prepare for this? I don't, I - -
>
> Judge: Based on a 1992 asylum application?
>
> Mr. Kreis: As it were, yeah.
>
> Judge: This is, this matter - - okay. A Notice to Appear was dated August of '06.
>
> ***
>
> There, there was no earlier application. The Government submitted a, the Government submitted the, or I should say you submitted the <u>Country Report</u>. If you want to proceed on the application for asylum, this is your opportunity.

Ramirez argues that the IJ never articulated any grounds for his decision and there is no stated or credited reason for denying Ramirez's request for a two-week continuance. The Government asserts that the IJ's denial of the written continuance motion was also a denial of the continuance of the asylum claim, so that the reason provided at that time applies also to this denial.

We are not persuaded by either argument. Under *Badwan*, "we look to the 'stated' and credited reason for the IJ's decision; we do not . . . hypothesize rational grounds upon which the IJ might have acted." 494 F.3d at 570-71. Here, although it could have been articulated better, it is obvious the IJ denied the request for a continuance based on the delay in the proceedings. We need not decide whether the IJ abused his discretion in denying the continuance based on a delay, because even assuming an abuse of discretion, the error would be harmless because Ramirez has not identified any prejudice resulting from that error. *See Gilaj v. Gonzales*, 408 F.3d 275, 290 (6th 2005) ("Where, however, the alien has failed to identify specific prejudice resulting from denial . . . , the error is harmless."). In order to establish a claim for asylum, a petitioner must show past persecution or a well-founded fear of future persecution on account of his race, religion, nationality,

membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101 (a)(42)(A), 1158(b); 8 C.F.R. §1208.13(b). Here, the only evidence presented in support of the application for asylum and withholding of removal was the 1992 application and the testimony of Ramirez at the October 26, 2007 hearing. Based on this evidence, Ramirez was unable to show well-founded fear of future persecution since he testified at the hearing that he had no fear of returning to Guatemala. The IJ and BIA both found Ramirez was also unable to establish past persecution. This finding was based on a lack of evidence. Ramirez contends that he was prejudiced by the denial of a continuance because his counsel was unprepared to proceed; thus, no full hearing was had, which resulted in the IJ's decision based on lack of evidence.[2]

Ramirez has provided no evidence of prejudice other than his conclusory statement that he was prejudiced. Ramirez has presented no evidence to show how an additional continuance would have benefitted him or that he would otherwise have been able to establish past persecution. In light of this, we conclude that Ramirez has not established prejudice so that, even if there had been an error by the IJ, it would have been harmless.

### C. Due Process

Ramirez also asserts that the IJ's denial of a continuance is a due process violation on the basis that he had a right to the continuance and that he lacked notice of the substance of the hearing. Regarding the first argument, "[i]t is well-settled that whether to grant a continuance is a determination left to the broad discretion of the IJ." *Ukpabi v. Mukasy*, 525 F.3d 403, 408 (6th Cir. 2008) (citing *Sedrakyan v. Gonzales*, No. 06-3053, 2007 WL 1892110, at \*4 (6th Cir. June 29,

---

[2] This allegation of prejudice is made by Ramirez in his attempt to establish a due process violation; however, it is equally applicable to the determination of whether the IJ's abuse of discretion was harmless

2007); 8 C.F.R. § 1003.29 (2003)). This court has previously rejected the same due process argument made by Ramirez, "holding failure to obtain discretionary relief 'does not amount to a deprivation of a liberty interest' protected by the Constitution." *Ukpabi*, 525 F.3d at 408 (quoting *Abu-Khaliel*, 436 F.3d at 635); *see also Huicochea-Gomez v. I.N.S.*, 237 F.3d 696, 700 (6th Cir. 2001). Ramirez's due process claim on the basis of his right to a continuance is similarly rejected here.

As to Ramirez's claim that he lacked notice of the substance of his hearing, we find that although Ramirez may have lacked notice, he is unable to show the required prejudice. For much the same reasons that we find the IJ's denial of the written motion separate and distinct from Ramirez's oral motion for a two-week continuance on the asylum application, we find it was not unreasonable for Ramirez to fail to realize that he would be required to present his case for asylum at the cancellation hearing. For example, the Notice of Hearing contains boxes to be checked to indicate whether an asylum hearing or removal hearing was scheduled; here the box for asylum hearing was not checked. Therefore, by not allowing a continuance, the IJ improperly required Ramirez to proceed without the proper notice and in violation of due process. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("The fundamental requisite of due process of law is the opportunity to be heard" and "[t]his right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . acquiesce or contest." (internal quotation marks omitted, first alteration added)); *see Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008) ("[I]t is clear that even if an alien enters the United States illegally, he or she may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." (internal quotation marks and alterations omitted)).

12

However, Ramirez cannot show the required prejudice—i.e., "that the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations." *Graham*, 519 F.3d at 549–50.  And, as a result, his due process claim is unavailing.

### III.  CONCLUSION

For all the reasons above, we **DENY** the petition for review.