302 Ga. 412
FINAL COPY

S17A1046.  THE STATE v. ADDAQUAY.

HINES, Chief Justice.

The State appeals from the habeas court's order granting relief to appellee

Thomas Addaquay on the ground that his plea counsel was constitutionally

ineffective in incorrectly advising him of the immigration consequences of his

plea of guilty.  For the reasons that follow, we reverse.

1.  In 2012, Addaquay pled guilty to criminal damage to property in the

second degree under OCGA § 16-7-23 (a) (1)[1] for conduct that occurred in 2002

and was sentenced as for a misdemeanor, as permitted under OCGA § 17-10-5,

to 11 months and 29 days on probation.  At that time, Addaquay was a lawful

permanent resident of the United States, a status evidenced by the issuance of

a "green card" to him.  See *United States v. Sonmez*, 777 F3d 684, 686, n.1 (4th

---

[1] Subsection (a) (1) says that "[a] person commits the offense of criminal damage to property in the second degree when he . . . [i]ntentionally damages any property of another person without his consent and the damage thereto exceeds $500.00[.]"

Cir. 2015) ("If the alien is granted lawful permanent resident status, the government issues the alien a Permanent Resident Card, commonly called a 'green card.'"); *Ramirez-Chacon v. Holder*, 397 Fed. Appx. 179, 182, n.1 (6th Cir. 2010) (explaining that a "green card" is "merely evidence or proof" of an alien's status as a lawful permanent resident and that the expiration of a "green card" does not alter that status). In 2015, Addaquay filed a petition for habeas corpus relief, contending that his plea counsel provided constitutionally ineffective assistance because he misinformed Addaquay that his plea of guilty to a felony would not affect his immigration status. At the February 2016 habeas hearing, Addaquay testified that he had been a legal resident of the United States since 1995 and that his current "green card" was up for renewal. He added that, during the plea negotiations, he told his plea counsel that his "primary concern was remaining in the country legally," and that his counsel told him that if he pled guilty under OCGA § 16-7-23 (a) (1) and was sentenced as for a misdemeanor, "it wasn't going to affect [his] immigration consequences, and [he] wasn't going to be deportable." According to Addaquay, he had recently spoken to an immigration attorney who told him that the guilty plea would prevent him from being able to renew his "green card" and to pursue an

2

application for citizenship. At the hearing, Addaquay's counsel argued that, although Addaquay was sentenced as for a misdemeanor, he pled guilty to a felony and that under immigration law, he could not renew his "green card" and was deportable and that counsel performed deficiently in misinforming him about that consequence. Emphasizing that, where "the law is clear that deportation is mandatory . . . , an attorney has a duty to accurately advise his client of that fact," the habeas court ruled that Addaquay was deportable as a result of his plea of guilty, that plea counsel performed deficiently in telling Addaquay that he would not be deportable, and that, but for plea counsel's misinformation, there is a reasonable probability that Addaquay would not have pled guilty but rather would have proceeded to trial.

2. To prevail on a claim of ineffective assistance of counsel in connection with a guilty plea, a defendant must show that his counsel's performance "'was deficient, and that absent the deficiency, there is a reasonable probability that he would have proceeded to trial rather than pleading guilty.'" *Frazier v. Mathis*, 286 Ga. 647, 648 (690 SE2d 840) (2010) (citation omitted). The burden to "show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, ___ U. S. ___, ___ (134 SCt 10, 187 LE2d 348)

3

(2013) (citation and punctuation omitted).

> With regard to immigration consequences, the United States Supreme Court held, in *Padilla v. Kentucky*, 559 U. S. 356 (130 SCt 1473, 176 LE2d 284) (2010), that the Sixth Amendment's guarantee of effective assistance of counsel protects a criminal defendant from erroneous advice about deportation, id. at 366, and that a defendant establishes *Strickland's* deficient performance prong by showing that counsel failed to accurately advise the defendant when the immigration consequences of a guilty plea "could be easily determined from reading the removal statute [8 USC § 1227]." Id. at 368-369. In that case, counsel provided his client with the false assurance that his guilty plea would not lead to his deportation. The Supreme Court acknowledged that immigration law can be "complex," and that where the law is unclear or discretionary, it may be sufficient to advise a client that he "may" face deportation. The *Padilla* Court emphasized, however, that where the deportation consequences of a plea are "truly clear . . . the duty to give correct advice is equally clear." Id.

*Encarnacion v. State*, 295 Ga. 660, 661 (763 SE2d 463) (2014).

Here, based on *Padilla*, Addaquay did not claim that the deportation consequences of his plea were unclear or uncertain, but instead claimed that he was clearly deportable based on his plea of guilty to criminal damage to property in the second degree and that plea counsel performed deficiently in telling him that he would not be deported. The State argues, however, that Addaquay failed to show that he is deportable under the removal statute, 8 USC

4

§ 1227,[2] and we agree.

To begin, in response to the State's merits brief, Addaquay fails to discuss the removal statute or argue that any provision of it requires his deportation. His arguments to the habeas court suffered from the same fault, and the habeas court's order did not cite to any statute that supported its finding that Addaquay was deportable. Addaquay hinged his case on his testimony that an immigration lawyer told him that he could not renew his "green card" because of the conviction, and the habeas court concluded that he therefore could be deported. However, whether an offense constitutes a deportable crime "is a question of law subject to de novo review." *Ildefonso-Candelario v. Atty. Gen. of the United States*, 866 F3d 102, 104 (3d Cir. 2017).

(a) The removal statute authorizes the removal of an alien on numerous grounds, and a conviction for violating OCGA § 16-7-23 (a) (1) could perhaps constitute a deportable offense under two provisions of 8 USC § 1227. First, under 8 USC § 1227 (a) (2) (A) (iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." The Immigration

---

[2] We invited amici curiae to file briefs on the deportability question, and their briefing has been most helpful to the Court.

and Naturalization Act (INA) contains a long list of offenses that constitute aggravated felonies. See 8 USC § 1101 (a) (43) (A)-(U). The one relevant to a conviction under OCGA § 16-7-23 (a) (1) is "a crime of violence (as defined in section 16 of title 18, United States Code, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 USC § 1101 (a) (43) (F). Even assuming that criminal damage to property in the second degree constitutes a crime of violence, because Addaquay was only sentenced to 11 months and 29 days in prison, the conviction is not considered an aggravated felony under 8 USC § 1101 (a) (43) (F). See, e.g., *United States v. Garza-Mendez*, 735 F3d 1284, 1287 (11th Cir. 2013) (holding that, for purposes of subsection (a) (43) (F), "'an aggravated felony is defined by the sentence actually imposed'" (citation omitted)); *United States v. Gonzalez-Coronado*, 419 F3d 1090, 1093 (10th Cir. 2005) (explaining that, "[t]o determine whether a prior conviction involved at least a one-year prison sentence [under 8 USC § 1101 (a) (43) (F)], this court looks to the actual sentence imposed").

(b) In addition to authorizing removal of an alien for conviction of an aggravated felony, an alien may be deported under 8 USC § 1227 for

6

committing a crime of moral turpitude.

> Any alien who — (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 245 (j) [8 USC § 1255 (j)]) after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable.

8 USC § 1227 (a) (2) (A) (i). Even assuming that criminal damage to property in the second degree is a crime of moral turpitude under the removal statute, deportation is triggered for a single conviction of a crime of moral turpitude only if the crime was committed within five years of the "date of admission" and a sentence of at least one year could be imposed.[3] See id. Here, a sentence of more than one year may be imposed for Addaquay's conviction. See OCGA § 16-7-23 (b) ("A person convicted of the offense of criminal damage to property in the second degree shall be punished by imprisonment for not less than one nor more than five years.").

Accordingly, the decisive issue is whether Addaquay committed the crime within five years of his "date of admission" to this country. For purposes of the

---

[3] The ten-year period for aliens provided lawful permanent resident status under 8 USC § 1255 (j) is inapplicable to this case.

7

five-year period of 8 USC § 1227 (a) (2) (A) (i) (I), the Board of Immigration Appeals has determined that "the phrase 'the date of admission' refers to the date of the admission by virtue of which the alien was present in the United States when he committed his crime." *Matter of Alyazji*, 25 I. & N. Dec. 397, 406 (BIA 2011). Under this definition, for example, an alien who was lawfully admitted to the United States in 2000, who returned to his home country in 2002, who was lawfully admitted again to the United States in 2004, and who then committed a crime of moral turpitude in 2006 for which he was convicted in 2007 would be deportable, because, when he committed the offense in 2006, he was in the United States pursuant to his admission in 2004, less than five years earlier. See id. at 407-408. We note that aliens who, like Addaquay, have become a lawful permanent resident of the United States have the privilege, unlike other noncitizens, of traveling outside the United States and returning without applying for admission on their return, except in certain limited circumstances. See 8 USC § 1101 (a) (13) (C) (i)-(vi). See generally *Sijapati v. Boente*, 848 F3d 210, 218 (4th Cir. 2017).

For Addaquay to be deportable because the crime of criminal damage to property in the second degree was a crime of moral turpitude under 8 USC §

8

1227 (a) (2) (A) (i) (I), he necessarily had to show that he committed the crime within five years of "the date of the admission by virtue of which [Addaquay] was present in the United States when he committed his crime." *Matter of Alyazji*, 25 I. & N. Dec. at 406. However, Addaquay offered evidence of only one date of admission, which was in 1995, and that date of admission was not within five years of the date of the commission of the crime in 2002. Accordingly, Addaquay failed to prove that he was deportable by virtue of having committed a crime of moral turpitude.

(c) The State also correctly argues that the habeas court erred in concluding that Addaquay's plea makes him deportable because it will prevent him from renewing his "green card." Addaquay's "green card" is "merely evidence or proof" of his status as a lawful permanent resident, *Ramirez-Chacon*, 397 Fed. Appx. at 182, a status which he has had since at least 2005, and that status does not terminate until "entry of a final administrative order of exclusion, deportation, or removal." *Savoury v. United States Atty. Gen.*, 449 F3d 1307, 1314 (11th Cir. 2006) (quoting then 8 CFR § 1.1 (p), now 8 CFR § 1.2). Moreover, "[a] person in deportation, exclusion, or removal proceedings is entitled to evidence of permanent resident status until ordered

excluded, deported, or removed. [U.S. Citizenship and Immigration Services] will issue such evidence in the form of a temporary permanent resident document that will remain valid until the proceedings are concluded." 8 CFR § 264.5 (g). Accordingly, the decision that will make Addaquay deportable does not concern his "green card," but the order of deportation itself, and, as we have explained above, Addaquay did not adequately prove that he is deportable.

(d) Finally, the State argues that the habeas court erred to the extent it granted relief on the ground that Addaquay's plea counsel was constitutionally ineffective because he misinformed Addaquay about the impact the plea might have on an application for citizenship. We agree. First, Addaquay testified at the habeas hearing that he told his plea counsel that his primary concern in taking the plea was to ensure that he could remain in the United States legally, not that he be able to obtain citizenship in the future. Moreover, there is no controlling authority extending the reasoning of *Padilla* and holding that the Sixth Amendment's guarantee of effective assistance of counsel encompasses advice about applications for citizenship or naturalization. See *Padilla*, 559 U. S. at 360, 364, 366, 369 (emphasizing that, because deportation or removal is a "'drastic measure'" that is "sometimes the most important part . . . of the

10

penalty" for noncitizen defendants who plead guilty to a crime and is "close[ly] connect[ed] to the criminal process," advice about a deportation consequence that is "truly clear" falls within the scope of representation required by the Sixth Amendment); *Escoffery v. United States*, 2013 U.S. Dist. LEXIS 160160, *4 (E.D. N.C. Nov. 8, 2013), affirmed by *United States v. Escoffery*, 572 Fed. Appx. 213 (4th Cir. 2014) (explaining that the court was not "aware of a judicial decision extending *Padilla* to the context here — the denial of a citizenship application" and declining to extend *Padilla* to that context). We therefore conclude that this claim of ineffective assistance of counsel is without merit.

Judgment reversed. All the Justices concur.

11

Decided October 30, 2017.

Habeas corpus. Fulton Superior Court. Before Judge Goger.

Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General, for appellant.

Law Office of Andre Johnson, Jesse N. Bacon, for appellee.

Russell C. Gabriel; Jason A. Cade; Suparna M. Joshi, amici curiae.