# Matter of Alla Adel ALYAZJI, Respondent

*Decided February 3, 2011*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

In general, an alien's conviction for a crime involving moral turpitude triggers removability under section 237(a)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(i) (2006), only if the alien committed the crime within 5 years after the date of the admission by virtue of which he or she was then present in the United States. *Matter of Shanu*, 23 I&N Dec. 754 (BIA 2005), overruled in part.

FOR RESPONDENT:  Wayne Sachs, Esquire, Philadelphia, Pennsylvania

AMICUS CURIAE:[1]  Emily Creighton, Esquire, Washington, D.C.

FOR THE DEPARTMENT OF HOMELAND SECURITY:  James A. Lazarus, Appellate Counsel

BEFORE:  Board Panel:  FILPPU, PAULEY, and WENDTLAND, Board Members.

FILPPU, Board Member:

This case presents a recurring question as to the proper interpretation of section 237(a)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(i) (2006), which (in pertinent part) authorizes the removal of any alien who "is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission," provided the crime is punishable by a sentence of imprisonment of 1 year or longer.  In *Matter of Shanu*, 23 I&N Dec. 754 (BIA 2005), *vacated sub nom. Aremu v. Department of Homeland Security*, 450 F.3d 578 (4th Cir. 2006), we held, first, that the term "admission" used in section 237(a)(2)(A)(i) referred to adjustment of status as well as admission at the border; and second, that an alien's conviction for a crime involving moral turpitude supported removal under that section so long as the crime was committed within 5 years after the date of *any* admission made by the alien.

We now overrule this second holding of *Matter of Shanu* and conclude instead that a conviction for a crime involving moral turpitude triggers

---

[1]  We acknowledge and appreciate the very helpful briefs submitted by the parties and by amicus curiae representing the American Immigration Council.

removability under section 237(a)(2)(A)(i) only if the crime was committed within 5 years after the date of the admission by virtue of which the alien was then in the United States. *See* 8 C.F.R. § 1003.1(g) (2010) ("By majority vote of the permanent Board members, selected decisions of the Board rendered by a three-member panel . . . may be designated to serve as precedents in all proceedings involving the same issue or issues.") This does not necessarily require that the date of admission be the alien's first, or even his most recent, admission. But it does mean that there is only one "date of admission" that is relevant to measuring the statutory 5-year period in relation to a particular offense.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent, who is alleged to be a native and citizen of Palestine, was admitted to the United States as a nonimmigrant in August 2001. He remained in the United States thereafter, and in April 2006 his status was adjusted to that of a lawful permanent resident of the United States. In January 2008, the respondent was convicted of indecent assault in violation of Pennsylvania law, based on a 2007 offense. As a result of that conviction, the Department of Homeland Security ("DHS") initiated these removal proceedings, in which the respondent is charged with removability under section 237(a)(2)(A)(i) of the Act, which provides as follows:

> Any alien who—
> (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 245(j) of this title) after the date of admission, and
> (II) is convicted of a crime for which a sentence of one year or longer may be imposed,
> is deportable.

Shortly after removal proceedings commenced, the respondent filed a written motion requesting their termination on the ground that his indecent assault conviction resulted from an offense committed more than 5 years after his "admission" as a nonimmigrant in August 2001. The Immigration Judge denied the motion based on *Matter of Shanu*, holding that the respondent is removable because he committed his offense less than 5 years after his "admission" to lawful permanent resident status in April 2006. The respondent acknowledged *Matter of Shanu* in his motion but argued that the Immigration Judge should decline to follow that precedent because its rationale had been repudiated or criticized by several reviewing courts. The Immigration Judge disagreed, finding that he was obliged to apply *Matter of Shanu*. This timely appeal followed, and the respondent and the DHS have

filed extensive briefs.  Furthermore, the American Immigration Council has filed an amicus curiae brief in support of the respondent.

## II.  ANALYSIS

### A.  Legal Background

Section 237(a) of the Act provides in its opening sentence that the grounds of deportability apply only to aliens "in and admitted to the United States." The language, structure, and purpose of the Act, taken as a whole, has led us to conclude that the class of aliens "in and admitted to the United States" consists of (1) those who entered the United States with the permission of an immigration officer after being inspected at a port of entry; and (2) those who entered the United States without permission or were paroled, but who subsequently became lawful permanent residents.

Members of the second group may never have been "admitted" within the meaning of section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2006), which defines "admission" to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." But once they obtain lawful permanent resident status, which allows them to work and live in the United States, they are assimilated to the same status as one who has been admitted at the border with an immigrant visa. *E.g.*, *Matter of Smith*, 11 I&N Dec. 325, 326-27 (BIA 1965) ("An applicant for adjustment of status under section 245 stands in the same position as an applicant who seeks to enter the United States with an immigration visa for permanent residence."), *superseded on other grounds by Matter of Hom*, 16 I&N Dec. 112 (BIA 1977).

Indeed, if adjustment of status were not considered an admission under the immigration laws, many lawful permanent residents would be considered inadmissible, despite their lawful status, based on their presence in the United States without having been admitted.  Section 212(a)(6)(A)(i) of the Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2006).[2]  It is the experience of this second group that best serves to explain why the Board has often held that adjustment of status is an "admission."  *See Matter of Rosas*, 22 I&N Dec. 616, 618-20 (BIA 1999) (holding that adjustment of status is an admission for purposes

---

[2]  Moreover, if adjustment of status is not an admission, then many lawful permanent residents would be ineligible for immigration benefits that are exclusively available to those who have been "admitted" to the United States, such as cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2006). *See Matter of Reza*, 25 I&N Dec. 296, 298, 300 (BIA 2010).

of section 237(a)(2)(A)(iii) of the Act); *see also Matter of Koljenovic*, 25 I&N Dec. 219, 221 (BIA 2010) (finding that at least some adjustments are admissions for purposes of section 212(h)); *Matter of Rodarte*, 23 I&N Dec. 905, 908 (BIA 2006) (holding that adjustment is an admission for purposes of section 212(a)(9)(B)(i)(II)); *Matter of Shanu*, 23 I&N Dec. at 756-57 (holding that adjustment is an admission for purposes of section 237(a)(2)(A)(i)).

Inevitably, some aliens are admitted to the United States more than once during their lives. For instance, some aliens who are admitted at the border with immigrant visas were previously admitted as nonimmigrant students, temporary employees, business visitors, or tourists. Others, such as the respondent, are admitted with nonimmigrant visas and are later permitted to obtain lawful permanent residence by means of adjustment of status, at which time we have considered them to be once again "admitted" as immigrants by operation of law. Still others are admitted to the United States as temporary nonimmigrants in their youths, only to return some years later without permission. If such aliens adjust to lawful permanent resident status, they too would be treated under our past rulings as having been "admitted" for a second time, despite having evaded inspection on the occasion of their most recent entry.

When an alien with multiple admissions engages in criminal conduct, complications can arise because many deportability grounds are focused on convictions entered "at any time after admission," without specifying *which* of the alien's various admissions those convictions must have followed. *E.g.*, sections 237(a)(2)(A)(ii), (iii), (B)(i), (C), (E)(i)–(ii) of the Act. Section 237(a)(2)(A)(i) of the Act, at issue here, is especially problematic because it requires a conviction for a crime involving moral turpitude that was committed within a limited period (i.e., 5 years) after the alien's "date of admission." When an alien with a single such conviction has multiple "admissions," this language begs the question of which "date of admission" should be viewed as having started the 5-year clock.

In *Matter of Shanu*, 23 I&N Dec. at 759-64, we concluded for a number of reasons that the 5-year clock is reset each time an alien is admitted, such that a crime involving moral turpitude committed within 5 years after *any* such admission would suffice, upon conviction, to render the alien deportable. Thus, we found the respondent in *Shanu* deportable because he committed a crime involving moral turpitude less than 5 years after his admission to lawful permanent resident status, even though he had also been admitted as a nonimmigrant more than 5 years before he committed his crime.

### B. Adjustment of Status as an Admission

In their appellate briefs, the parties and amicus have focused much of their criticism on our precedents treating adjustment of status as an admission. In particular, they note that some reviewing courts have criticized or rejected the statutory interpretation embodied in *Matter of Shanu*, and they argue that we should abandon that precedent outright in order to ensure that a uniform nationwide interpretation of the statute exists. As the following discussion explains, however, there is nothing "uniform" about the circuits' treatment of the "adjustment-as-admission" issue. Moreover, the parties and amicus have not grappled to our satisfaction with the very real interpretive problems that would arise from our adoption of their suggested alternative approaches.

As the parties and amicus point out, the Board's treatment of adjustment of status as an "admission" has been met with a mixed response in the Federal courts of appeals. Yet most recently, the United States Court of Appeals for the Seventh Circuit found that we acted reasonably in treating adjustment of status as an admission under section 212(a)(9)(B)(i)(II) of the Act, which provides for the inadmissibility of certain aliens who seek lawful "admission" to the United States within 10 years after a prior period of unlawful presence in this country. *See Lemus-Losa v. Holder*, 576 F.3d 752, 757 (7th Cir. 2009). In several precedents, we held that section 212(a)(9)(B)(i)(II) applied not just to aliens who were seeking admission at the border, but also to those who had reentered the United States unlawfully and were seeking "admission" by means of adjustment of status. *See Matter of Rodarte*, 23 I&N Dec. at 908; *see also Matter of Lemus*, 24 I&N Dec. 373, 377 (BIA 2007). The Seventh Circuit recognized that adjustment of status did not fit within the definition of "admission" set forth at section 101(a)(13)(A) of the Act, but it nevertheless found "no reason to disagree" with our "contextual reading" of the statute, under which adjustment qualified as an admission. *Lemus-Losa v. Holder*, 576 F.3d at 757 (internal quotation marks omitted).

The Ninth Circuit has likewise held that adjustment of status can be an "admission." For instance, in *Ocampo-Duran v. Ashcroft*, 254 F.3d 1133, 1134-35 (9th Cir. 2001), the court held that adjustment of status was an "admission" for purposes of section 237(a)(2)(A)(iii) of the Act, which authorizes the removal of any alien convicted "at any time after admission" of an aggravated felony. Although the respondent in *Ocampo-Duran* had never been "admitted" within the meaning of section 101(a)(13)(A) of the Act, the Ninth Circuit found him removable because he had been convicted of an aggravated felony after being "'lawfully admitted' as a legal permanent resident." *Id.* (quoting section 101(a)(20) of the Act, which defines the term "lawfully admitted for permanent residence"). We arrived at much the same conclusion in *Matter of Rosas*, 22 I&N Dec. at 623-24.

In cases arising under section 237(a)(2)(A)(i) of the Act, however, the courts have been more reluctant to construe adjustment of status as an "admission." Specifically, the Sixth and Fourth Circuits have held that for purposes of section 237(a)(2)(A)(i), the term "admission" is largely cabined by the language of section 101(a)(13)(A). *Zhang v. Mukasey*, 509 F.3d 313, 315-16 (6th Cir. 2007); *Aremu v. Dep't of Homeland Sec.*, 450 F.3d at 581-82. The Seventh Circuit has also declined to treat adjustment of status as an admission in the context of section 237(a)(2)(A)(i), at least in the absence of a Board precedent explaining why it should do so. *Abdelqadar v. Gonzales*, 413 F.3d 668, 673-74 (7th Cir. 2005).[3] Moreover, in a decision issued before *Matter of Shanu* was published, the Ninth Circuit distinguished *Ocampo-Duran* and held that the date of an alien's adjustment of status could not be considered "the date of admission" under section 237(a)(2)(A)(i) if, at the time of adjustment, the alien was already lawfully present in the United States pursuant to an earlier nonimmigrant admission. *Shivaraman v. Ashcroft*, 360 F.3d 1142, 1147-48 (9th Cir. 2004).[4]

The respondent and amicus point to these circuit court cases and argue that treating adjustment of status as a de facto admission in all section 237(a)(2)(A)(i) cases is simply a bridge too far. Tellingly, however, neither the parties nor amicus urges us to treat section 101(a)(13)(A) of the Act as providing an *exclusive* definition of the term "admission." On the contrary, everyone seems to agree that adjustment of status can be an "admission" some of the time. In the view of the respondent and amicus, however, the best approach would be to treat adjustment of status as an admission *only* with respect to those aliens who had never previously been "admitted" within the meaning of section 101(a)(13)(A). But while this superficially modest proposal might simplify our analysis in this particular case, its broader implications give us pause.

For example, imagine an alien who was admitted to the United States as a child in 1990 on a nonimmigrant tourist visa and departed this country

---

[3] The *Abdelqadar* court was evidently unaware of *Matter of Shanu*, which was decided only a few weeks before the Seventh Circuit's decision was published. In the wake of *Shanu*, which arguably provided the explanation called for by the *Abdelqadar* court, the Seventh Circuit has accepted that adjustment of status can be an admission, at least in some contexts. *See Lemus-Losa v. Holder*, 576 F.3d at 757.

[4] The Fifth Circuit has looked to section 101(a)(13)(A) as definitive authority when construing the phrase "has previously been *admitted* to the United States as an alien lawfully admitted for permanent residence" in the context of section 212(h) of the Act. *Martinez v. Mukasey*, 519 F.3d 532, 542-45 (5th Cir. 2008). *But see Matter of Koljenovic*, 25 I&N Dec. at 223 (distinguishing *Martinez* and holding that adjustment of status satisfies the "has previously been admitted" requirement of section 212(h), at least where such adjustment was the alien's *only* admission).

with his parents 2 weeks later. If that same alien, now a grown man, returned to the United States without inspection in 2000 and adjusted status in 2002 under section 245(i) of the Act, 8 U.S.C. § 1255(i) (2006), the rule advocated by the respondent and amicus would presumably immunize the alien from removal for a subsequent conviction for a crime involving moral turpitude, simply because no such offense could possibly have been committed within 5 years after the date of his 1990 admission as a nonimmigrant. This hypothetical is far from implausible, and we remain convinced that such an interpretation "would attach . . . disproportionate significance to long-past nonimmigrant admissions and . . . would . . . seriously undermine the deterrent effect of section 237(a)(2)(A)(i) as it relates to aliens with multiple admissions." *Matter of Shanu*, 23 I&N Dec. at 761.

The respondent's preferred rule would also potentially upset decades of well-settled law in some of the most common relief contexts. Sections 212(h) and (i) of the Act permit the Attorney General to waive the application of various grounds of inadmissibility if a "denial of admission" or a "refusal of admission" would result in extreme hardship to the alien's close relatives in the United States. For many years, the Attorney General and the DHS have permitted aliens in the United States to seek such waivers in conjunction with adjustment of status, on the theory that an application for adjustment of status under section 245 of the Act requires a showing that the alien "is admissible to the United States for permanent residence" and is, for all practical purposes, the equivalent of an application for admission as an immigrant. *E.g.*, *Matter of Parodi*, 17 I&N Dec. 608 (BIA 1980). But if adjustment of status is *not* an "admission" for previously admitted aliens, as the respondent and amicus argue, then such aliens would seem to be ineligible for waivers in the adjustment context, since any prospective hardship befalling their family members would no longer be attributable to a denial or refusal of "admission." Meanwhile, aliens who seek adjustment after having entered the United States *unlawfully* would remain eligible for waivers because, for them, adjustment of status would still be an admission. We are reluctant to read such an apparently senseless distinction into the Act.

In order to avoid outcomes such as these, the DHS urges us to adopt the interpretation of the term "admission" proposed by the respondent and amicus, but only in section 237(a)(2)(A)(i) cases. In other contexts, the DHS would have us take a more flexible approach, under which "admission" would be construed in accordance with section 101(a)(13)(A) except where vindication of the legislative purpose and the avoidance of absurd results dictates a broader reading. In the view of the DHS, the "admission" concept has so many applications and is used in so many different ways throughout the Act that it would be "futile" for us to restrict its meaning by reference to section 101(a)(13)(A) or any other universal standard. Thus, the DHS argues that we should "reserve for another day how to interpret 'admission'

in . . . other contexts, rather than attempt to craft one definition that applies to all sections of the Act and in all scenarios." We are skeptical, however, that such flexibility is permitted to us or is even desirable.

As a rule, a single statutory term should be interpreted consistently. *Clark v. Martinez*, 543 U.S. 371, 382 (2005). That said, we realize that statutorily defined terms may, if general enough, accommodate subtly different meanings in different contexts, provided that *all* those various meanings are consistent with the one statutory definition. *E.g.*, *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 342-44 (1997). But here, the DHS invites us to redefine the term "admission" on a case-by-case basis, sometimes consistently with the literal terms of the statutory definition and sometimes not, with our interpretation customized to meet each new context. We are aware of no principle of law that would allow us to do so. Furthermore, such an inconsistent understanding of what constitutes an "admission" would introduce unpredictability and incoherence to the law, whereas the whole point of treating adjustment of status as an admission *in all cases* is to make the whole Act work coherently and uniformly in all its applications.

We are sensitive to the fact that our treatment of adjustment of status as an admission is a controversial practice in some contexts, but we are also troubled by some of the implications of the contrary rules advocated by the parties. In the final analysis, we conclude that resolution of the present matter does not warrant disturbing our existing precedents holding that adjustment of status constitutes an admission. As we understand it, the respondent's complaint about *Matter of Shanu* is not solely that we treated adjustment of status as an "admission," but also that we construed the phrase "the date of admission" to encompass the date of *any* admission. With respect to that issue, we concede the force of the respondent's complaint.

## C.  "The Date of Admission"

In adopting the "any admission" rule, we purported to follow Supreme Court and Board precedents that had adopted a similar "any entry" rule when construing the language of various statutory predecessors of section 237(a)(2)(A)(i). *Matter of Shanu*, 23 I&N Dec. at 762-63. Those statutes, which required a conviction for a crime involving moral turpitude committed "within 5 years after entry," had for many years been interpreted to render an alien deportable so long as the crime was committed within 5 years after *any* entry. *See, e.g.*, *United States ex rel. Volpe v. Smith*, 289 U.S. 422 (1933); *Matter of Sanchez*, 17 I&N Dec. 218 (BIA 1980); *Matter of A-*, 6 I&N Dec. 684 (BIA 1955). We are now persuaded, however, that our decision in *Shanu* placed too much focus on historical practice and too little on the actual language of the current statute.

In 1990 Congress reorganized the grounds of deportability and substantially changed their language. Of particular relevance here, Congress repealed the "after entry" language construed in *Volpe* and its progeny and substituted a new ground of deportability that focused on convictions for which the underlying crime involving moral turpitude was committed "within five years after *the date of* entry." Immigration Act of 1990, Pub. L. No. 101-649, § 602(a), 104 Stat. 4978, 5077, 5079 (effective with regard to proceedings commenced on or after March 1, 1991) (emphasis added) (codified at section 241(a)(2)(A)(i)(I) of the Act, 8 U.S.C. § 1251(a)(2)(A)(i)(I) (Supp. II 1990)). In 1997, the term "entry" was replaced with "admission," but the phrase "within five years after the date of" was carried over into the new statute. *Matter of Shanu*, 23 I&N Dec. at 763.

In discussing these statutory changes in *Shanu*, we found "little significance in Congress's addition of the words 'the date of' preceding 'admission' [because] [i]t was no less important under prior law for an adjudicator to identify a particular date when seeking to ascertain, in retrospect, when the 5-year clock began to run under the predecessor versions of section 237(a)(2)(A)(i)." *Id*. at 763 n.6. But what we failed to perceive in *Shanu* was that Congress's decision to substitute the words "five years after *the date of admission*" for "five years after entry" had altered the grammatical structure of the phrase in a manner that undermined the "any entry" rule.

The phrase "within five years after entry," employed in earlier versions of the statute, was general and open-ended. The phrase "within five years after the date of admission" is more specific; it contains a definite article ("the") and a singular object ("date"). This narrower language most naturally connotes a single date, and it does not invite the same flexibility that the "after entry" language of the prior statute invited. *E.g.*, *Zhang v. Mukasey*, 509 F.3d at 315-16; *Shivaraman v. Ashcroft*, 360 F.3d at 1146. We paid insufficient attention to this aspect of section 237(a)(2)(A)(i) when we decided *Matter of Shanu*, a deficiency we now remedy. Specifically, we now hold that the statutory phrase "the date of admission" necessarily refers to a *single* date in relation to the pertinent offense; thus, not every "date of admission" triggers the 5-year clock.

Having concluded that the reference to "the date of admission" in section 237(a)(2)(A)(i) refers to a single date in relation to the pertinent offense, we must now decide *which* date of admission applies when confronted with an alien who has been admitted more than once. The statutory language does not specify which of an alien's various admissions should be considered, and thus we find the statute to be ambiguous in that regard. We must therefore arrive at a reasonable construction of the statute, taking into account the language and structure of the Act as a whole. *See Samantar v. Yousuf*, 130 S. Ct. 2278, 2289 (2010) ("'[W]e do not . . . construe statutory phrases

in isolation; we read statutes as a whole.'") (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)).

As we noted earlier, an alien can be "deportable" under section 237(a) of the Act only if he is "in and admitted to the United States," that is, ordinarily, present in the United States *pursuant to* an admission.  That means that an alien who commits a crime involving moral turpitude while in the United States after entering without inspection is not "deportable," *even if* he had been admitted at some point in the past, because such past admissions are untethered to the period of presence during which he committed the crime.[5] Given that section 237(a) is focused on admission plus presence, we find that the most natural reading of section 237(a)(2)(A)(i) is that the phrase "the date of admission" refers to the date of the admission by virtue of which the alien was present in the United States when he committed his crime.[6]

Thus, to ascertain an alien's deportability under section 237(a)(2)(A)(i) of the Act, we look first to the date when his crime was committed.  If, on that date, the alien was in the United States pursuant to an admission that occurred within the prior 5-year period, then he is deportable.  Conversely, the alien is not deportable if he committed his offense more than 5 years after the date of the admission pursuant to which he was then in the United States. Moreover, under this understanding of the phrase "the date of admission," the 5-year clock is not reset by a new admission *from within* the United States (through adjustment of status).[7]  Rather, such a new admission merely extends

---

[5] Instead, such an alien would be "inadmissible" under section 212(a)(6)(A)(i) of the Act by virtue of his unlawful presence and would also be subject to a charge under section 212(a)(2)(A)(i)(I) of the Act on the basis of his conviction for a crime involving moral turpitude.

[6] This interpretation will sometimes incidentally lead us to focus upon the date of an alien's first admission, but not always.  On the contrary, a rule of decision focused exclusively on the date of the alien's first admission, even if long past and untethered to his presence in the United States when the crime involving moral turpitude was committed, is not reconcilable with the language and purpose of the statute and would lead to "peculiar consequences" when applied to aliens who were briefly admitted many years ago (such as tourists, perhaps) and who remained outside the United States for decades thereafter before being readmitted.  *Matter of Shanu*, 23 I&N Dec. at 761.  We therefore make clear that the "date of admission" that triggers the 5-year clock under section 237(a)(2)(A)(i) need not always be the alien's first admission.

[7] In holding that a previously admitted alien's 5-year period could be reset upon adjustment of status, the Board, in *Matter of Shanu*, 23 I&N Dec. at 758, 759-60, found it significant that such a resetting of the clock appeared to be contemplated by the statute's parenthetical reference to aliens "provided lawful permanent resident status under section 245(j)" of the Act, all of whom were necessarily "admitted" as nonimmigrants before they obtained lawful permanent resident status.  Section 237(a)(2)(A)(i) authorizes the removal

(continued...)

an existing period of presence that was sufficient in and of itself to support the alien's susceptibility to the grounds of deportability.[8]

In order to illustrate how we understand the statute to operate, we return to our earlier hypothetical involving an alien who was admitted to the United States as a nonimmigrant tourist in 1990 on a family trip with his parents, and who returned to his home country a few weeks later in compliance with the terms of his temporary visa. Imagine that in the summer of 1998, the

---

(...continued)

of such aliens if they are convicted of a crime involving moral turpitude committed within *10 years* after the date of admission, and we understood the regulations implementing section 245(j) to reflect the Attorney General's view that this 10-year period is to be measured from the date when such aliens acquired lawful permanent resident status, *not* from the date when they were first admitted as nonimmigrants. *See* 8 C.F.R. §§ 245.11(h), 1245.11(h) (2010).

The Fourth Circuit, in rejecting *Matter of Shanu*, believed that the Board had correctly interpreted the section 245(j) regulations but nevertheless held that we erred by relying on those regulations for our "interpretation of the plain meaning of a statute." *Aremu v. DHS*, 450 F.3d at 582. The Attorney General's interpretation of the Act, however, if embodied in these regulations, would have the force and effect of law as to this Board and would need to be followed unless and until invalidated by a court of competent jurisdiction. *Matter of Fede*, 20 I&N Dec. 35, 36 (BIA 1989).

The respondent did not acquire lawful permanent resident status under section 245(j), and thus we have no present occasion to decide what effect, if any, the rule we announce today will have for such aliens, or to fully reexamine the impact of the regulations pertaining to section 245(j) adjustees. Indeed, the precise wording of those regulations may allow for alternative readings, despite their initial apparent import. For present purposes, it suffices to observe that the statutory language pertaining to adjustees under section 245(j) was adopted in 1994 through special, stand-alone legislation and is implemented by means of unique regulatory requirements, potentially providing a basis for separate treatment, despite the general undesirability of different rules applying within a single statutory provision. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 130003(d), 108 Stat. 1796, 2026 ("VCCLEA"), *amended by* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Pub. L. No. 104-208, §§ 671(a)(4)(B), (7), 110 Stat. 3009-546, 3009-721 (effective as if included in the VCCLEA); *see also* 8 C.F.R. §§ 245.11, 1245.11.

[8] While our construction of the statute is largely consistent with that adopted by the Ninth Circuit in *Shivaraman v. Ashcroft*, 360 F.3d at 1148-49, it is subtly different. In *Shivaraman*, the Ninth Circuit held that the date of adjustment of status could not be deemed "the date of admission" with respect to an alien who had previously been admitted as a nonimmigrant and had maintained continuous lawful nonimmigrant status until the date of adjustment. We agree with that holding. However, *Shivaraman* can also be read to imply that a different rule might be appropriate if the alien had overstayed (or otherwise violated) his nonimmigrant status before adjusting. We now make clear that such an overstay or violation would have *no effect* on our analysis under section 237(a)(2)(A)(i) of the Act.

same alien was once again admitted to the United States, this time as a nonimmigrant college student. In 2002, however, the alien committed a crime involving moral turpitude for which he was convicted in 2004. In 2005, the DHS commenced removal proceedings, charging the alien with deportability under section 237(a)(2)(A)(i) of the Act. Under the interpretation of the statute we adopt today, the alien is deportable because, on the date when he committed his offense in 2002, he was in the United States pursuant to his admission as a nonimmigrant student in 1998, less than 5 years earlier. Although the alien's *first* admission occurred in 1990, more than 5 years before he committed his crime, that first "date of admission" is irrelevant because the alien was not in the United States pursuant to that first admission when he committed his crime.

Our rule leads to a very different outcome in the respondent's case, however. When the respondent committed his crime involving moral turpitude in 2007, he was in the United States pursuant to his 2001 admission as a nonimmigrant. Inasmuch as the respondent committed his offense more than 5 years after that "date of admission," he is not deportable, even though we would treat him as having been "readmitted" by means of adjustment of status in April 2006. The respondent's 2006 adjustment of status, which our case law deems to be an admission, did not reset the 5-year clock because it added nothing to the deportability inquiry; it may have *extended* or reauthorized his then-existing presence, but it did not change his status vis-à-vis the grounds of deportability.[9]

## III. CONCLUSION

In conclusion, we hold that an alien is deportable under section 237(a)(2)(A)(i) of the Act if he (1) is convicted of a crime involving moral turpitude that was punishable by a term of imprisonment of at least 1 year and (2) was, on the date of the commission of that crime, present in the United States pursuant to an admission that occurred not more than 5 years earlier. In so ruling, we find it unnecessary to disturb our existing precedents holding that adjustment of status is an "admission." When the respondent committed the crime upon which his removal charge is based, he was present in the United States pursuant to an admission that occurred more than 5 years

---

[9] The situation would have been different had the respondent adjusted status in 2006 after entering the United States without inspection. In *that* case, the date of adjustment would have triggered the running of the 5-year clock because it would have commenced (rather than extended) the respondent's then-current period of presence in the United States following an admission.

before.  Thus, he is not removable under section 237(a)(2)(A)(i) of the Act, and his removal proceedings will be terminated.

    **ORDER:**   The appeal is sustained and the removal proceedings are terminated.