BERZON, Circuit Judge,
concurring:
Although I concur in the majority opinion, some comment on the Board of Immigration Appeals’ (“BIA”) precedential opinions affecting the interpretation of section 212(h) of Immigration and Nationalities Act (“INA”) is in order. See In re Rodriguez, 25 I. & N. Dec. 784 (BIA 2012); In re Alyazji, 25 I. & N. Dec. 397 (BIA 2011); In re Koljenovic, 25 I & N Dec. 219 (BIA 2010); In re Rosas-Ramirez, 22 I. & N. Dec. 616 (BIA 1999).
The overall premise of those opinions is that the plain language approach to the incorporation of the definition of “admission” and “admitted” in INA section 101(a)(13) cannot suffice, both in general and with regard to the section 212(h) waiver. The BIA stresses that the INA elsewhere provides for the assimilation of adjustment of status to admission,[1] and *1055 disregarding that assimilation leads to results that could not have been intended. Alyazji, in particular, maintains that a uniform interpretation of the term “admission” throughout the INA as including adjustment of status is essential to avoid inconsistent and arbitrary results. See Alyazji, 25 I. & N. Dec. at 402-04.
This point has considerable force, and I was initially inclined to defer to it, as an acceptable interpretation of the INA as a whole and therefore of the section 212(h) waiver. On reflection, however — and given the uniform holdings to the contrary of every federal Court of Appeals that has addressed the question — I am persuaded by the majority’s overall approach, which I take to be essentially this:
We must apply a plain words interpretation to the statutory definition of “admission” and “admitted” in the INA when we can sensibly do so. In this case, the juxtaposition of the statutorily defined term, “admitted,” INA § 101(a)(13), with a second such term, “lawfully admitted for permanent residence,” id. § 101(a)(20), particularly requires a plain words approach to the first term; otherwise, the term “admitted” would be redundant of the second phrase. In some instances, however, such as where there has been no admission of the sort contemplated by the statute, yet the context requires some trigger date by which to measure a later event, or where the result of treating an adjustment of status as if there had been no admission would be absurd, adjustment of status must be treated as admission. See Maj. Op. at pp. 1052-53.
This nuanced approach now seems to me more faithful to the appropriate division of responsibility between Congress and administrative agencies, and between such agencies and the courts, embodied in Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and its progeny, than the BIA’s insistence on abandoning the plain language throughout the INA with regard to the terms “admitted” and “admission,” so as to avoid a context-specific approach in those circumstances in which the statutory definition simply will not work. Put another way, although the BIA’s insistence on uniformity is perhaps a more orderly answer — in the sense of assuring consistency and limiting interpretive discretion — allowing the agency and courts to substitute for a definition that is in the statute one that is not, even when the statutory definition is perfectly coherent given the context and other features of the text, goes beyond the agency’s authority and, derivatively, ours. As the opinion does not insist on a literal interpretation of “admission” where these conditions are not met, and where the statutory assimilation of adjustment to admission therefore works better, I accept its reasoning.
It is also worth pointing out that some of the anomalies that the BIA’s cases suggest arise unless adjustment of status is considered admission for all INA purposes do not, in fact, exist.
For example, Alyazji suggests that if an adjustment of status does not constitute an admission, many immigrants who currently seek waivers under section 212(h) would no longer be eligible to do so. See Alyazji, 25 I. & N. Dec. at 403. Alyazji points out that section 212(h)(1)(B) “permit[s] the Attorney General to waive the application of various grounds of inadmissibility if a ‘denial of admission’ ... would result in extreme hardship to the alien’s close rela *1056 tives in the United States.” Id. The -BIA contends that as a result,
if adjustment of status is not an “admission” for previously admitted aliens, .... then such aliens would seem to be ineligible for waivers in- the adjustment context, since any prospective hardship befalling their family members would no longer be attributable to a denial or refusal of “admission.” Meanwhile, aliens who seek adjustment after having entered the - United States unlawfully would remain eligible for waivers because, for them, adjustment of status would still be an admission.
Id. (emphasis in original).
The BIA’s concern is unjustified. Section 212(h) applies only to aliens who are “inadmissible” or “ineligible to receive visas” due to criminal activity. See INA § 212(a)(2). To be eligible for adjustment of status, an alien must ordinarily be admissible, and must receive a visa. See, e.g., id. § 245(a). And any ambiguity that may be created by reference to “the alien’s denial of admission[,]” id. § 212(h)(1)(B), in the waiver section is cleared up (1) by the reference to “an alien lawfully admitted for permanent residence” in. the same sentence as eligible for a waiver — defined in section 101(a)(20) as a status separate from actual admission at the border; and (2) the explicit permission in the next sentence to the-Attorney General to consent to “admission to the United States, or adjustment of status[,T id. § 212(h)(2) (emphasis added). Indeed, the inclusion of both terms, separately, within section 212(h)(2) belies the notion that the first, admission, always includes the second, adjustment, and indicates, instead, that it at least sometimes does not.
Koljenovic similarly asserts that if adjustment of status is not treated as an “admission,” an alien who enters without inspection and later adjusts status “would be in the absurd position of being a lawful permanent resident without ever having been ‘admitted’ in that status and thus could be subject to inadmissibility under section 212(a)(6)(A)® of the Act[,]” Kolje-novic, 25 I. & N. Dec. at 222, as an “alien present in the United States without being admitted or paroled,” INA § 212(a)(6)(A)®. Thus, “many lawful permanent residents would be considered inadmissible, despite their lawful status, based on their presence in the United States without having been admitted.” Al-yazji, 25 I. & N. Dec. at 399. But individuals whose status has been adjusted are assigned a constructive date of lawful admission for permanent residence. See INA § 245(b). And section 237(a)(1)(A) explicitly treats as deportable an alien inadmissible “at the time of entry or adjustment of status,” clearing .up any ambiguity about whether aliens who have adjusted status are to be treated as if they were at the border seeking admission for purposes of the removal statutes. Id. § 237(a)(1)(A) (emphasis added). So, once again, where a literal interpretation of “admission” might lead to absurdities, the statute mentions “adjustment” specifically, and so signals that in the particular context, adjustment is to be assimilated to adjustment. See also Ocampo-Duran v. Ashcroft, 254 F.3d 1133, 1134-35 (9th Cir.2001) (rejecting as an absurdity the argument that an alien who adjusted status was not removable as an “alien ... convicted of an aggravated felony at any time after admission,” INA § 237(a)(2)(A)(iii), “because he was never technically ‘admitted’ for purposes of the statute”).
Finally, I disagree with the BIA that, under this Court’s interpretation, an alien who adjusts status without having previously been admitted would be ineligible for cancellation of removal. See Alyazji, 25 I. & N. Dec. at 399 n. 2. The Attorney Gener *1057 al may cancel the removal of an alien who, inter alia, “has resided in the United States continuously for 7 years after having been admitted in any status.... ” INA § 240A(a)(2) (emphasis added). The BIA suggests that if adjustment of status is not deemed an “admission,” an alien who entered unlawfully before adjusting status would not meet the 7-year continuous residence requirement for cancellation.
Our interpretation does not require this result. This is precisely the situation identified above: there has been no admission of the type envisioned by section 101(a)(13)(A), but the INA requires a trigger date by which to measure the 7 years of continuous residence. In that context, the date of an adjustment of status may be used as a date of admission.
For these reasons, I find the majority’s approach more likely to lead to results consistent with Congress’ overall intent in this complicated and oft-amended statute, and view the anomalies identified by the BIA as overblown. I therefore concur.

. See, e.g., INA § 101(a)(20) (designating those who have adjusted status as having been "lawfully admitted for permanent residence”) (emphasis added); id. §§ 245(a), (i) (authorizing the Attorney General to adjust the status of certain aliens "to that of an alien lawfully admitted for permanent residence” as long as they are "admissible" or have received a waiver of inadmissibility) (emphasis added); id. § 245(b) (requiring the Attorney General, having adjusted an alien’s status to that of a permanent resident, to "record the *1055 alien’s lawful admission for permanent residence as of the date” of adjustment) (emphasis added); id. § 240A(b)(3) (same).