**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1204**

ASHISH SIJAPATI,

                              Petitioner,

        v.

DANA JAMES BOENTE, Acting Attorney General,

                              Respondent.

**No. 15-1804**

ASHISH SIJAPATI,

                              Petitioner,

        v.

DANA JAMES BOENTE, Acting Attorney General,

                              Respondent.

On Petitions for Review of Orders of the Board of Immigration Appeals.

Argued:  October 25, 2016                    Decided:  February 1, 2017

Before TRAXLER, KEENAN, and WYNN, Circuit Judges.

—————

Petitions for review denied by published opinion. Judge Wynn wrote the opinion, in which Judge Traxler and Judge Keenan joined.

—————

**ARGUED**: Benjamin Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Laura Halliday Hickein, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF**: Irina Manelis, DYER IMMIGRATION LAW GROUP, P.C., Henrico, Virginia, for Petitioner. Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Shelley R. Goad, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

—————

WYNN, Circuit Judge:

Petitioner Ashish Sijapati, a native and citizen of Nepal, seeks review of an order by the Board of Immigration Appeals ("BIA") finding him removable under Section 237(a)(2)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(i). That section authorizes the removal of any alien who "is convicted of a crime involving moral turpitude committed within *five years . . . after the date of admission*." *Id.* (emphasis added).

Sijapati argues that the BIA erred in finding him removable under Section 237(a)(2)(A)(i) because his conviction on December 12, 2007, of a crime involving moral turpitude occurred more than five years after he was first admitted to the United States on January 25, 2001. But the BIA relied upon its decision in *Matter of Alyazji*, 25 I. & N. Dec. 397 (B.I.A. 2011), to determine that Sijapati's relevant "date of admission" was January 18, 2003: the date he was most recently admitted to the United States after taking a brief vacation abroad. Because we accord *Chevron* deference to the BIA's decision in *Matter of Alyazji*, we deny Sijapati's petition for review.

I.

Sijapati first entered and was admitted to the United States on a nonimmigrant L-2 visa on January 25, 2001. On December 31, 2002, Sijapati departed the United States for a two-and-a-half week vacation to Nepal, reentering the United States on January 18, 2003, pursuant to his existing L-2 visa. On March 16, 2005, federal immigration officials approved Sijapati's application for adjustment of status as a lawful permanent resident.

3

On December 12, 2007—more than five years after Sijapati was first admitted into the United States on January 25, 2001, under the L-2 visa, but less than five years after his most recent admission on January 18, 2003, under that visa—a circuit court in Virginia convicted Sijapati of felony embezzlement and imposed an eighteen-month suspended sentence. Following his conviction, the Department of Homeland Security issued to Sijapati a Notice to Appear before the immigration court to face the charge of removability from the United States under Section 237(a)(2)(A)(i) of the INA for having been convicted of a crime of moral turpitude within five years of the date of admission. In response, Sijapati moved to terminate the proceedings against him, arguing that his embezzlement conviction did not render him removable. The immigration court denied Sijapati's motion, finding that his embezzlement conviction constituted a crime involving moral turpitude which rendered him removable.

Sijapati then filed a renewed motion to terminate his removal proceedings which the immigration court construed to be a motion to reconsider its prior decision. In denying this second motion, the immigration court found that *Alyazji* controlled the determination of Sijapati's date of admission, and thus, that Sijapati's admission on January 18, 2003, was "the admission pursuant to which [he] was in the United States at the time that he committed the crime involving moral turpitude"—"but for which he [would not have been] present in the country." A.R. 219. Accordingly, the immigration court declined to terminate Sijapati's removal proceedings and ordered that he be granted voluntary departure in lieu of removal.

Sijapati appealed to the BIA, which adopted and affirmed the immigration court's determination that the BIA's reasoning in *Alyazji* "le[d] to the conclusion that January 18, 2003, is the relevant 'date of admission' in calculating . . . whether [Sijapati] is removable under section 237(a)(2)(A)(i) of the [INA]." A.R. 67. From the BIA's dismissal of his appeal, Sijapati timely filed a petition for review in this Court.

II.

Sijapati's petition requires us to interpret the phrase "the date of admission" in Section 237(a)(2)(A)(i). "Matters of statutory construction present questions of law, which we generally review de novo." *Hosh v. Lucero*, 680 F.3d 375, 378 (4th Cir. 2012). However, when called upon to review the BIA's interpretation of a provision in the INA, we must keep in mind that we are "reviewing the considered judgment of the federal agency charged with interpreting and administering the statute at issue in this case." *Nwolise v. INS*, 4 F.3d 306, 309 (4th Cir. 1993). As such, "the legal determinations of the [BIA] in interpreting the [INA] are entitled to deference by this court." *Id.* To that end, the BIA's interpretation of an ambiguous provision in the INA "must be given controlling weight unless th[at] interpretation[] [is] 'arbitrary, capricious, or manifestly contrary to the statute.'" *Fernandez v. Keisler*, 502 F.3d 337, 344 (4th Cir. 2007) (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

Because *Chevron* deference "is accorded only when an 'agency's interpretation is rendered in the exercise of [its] authority [to make rules carrying the force of law],'" *Martinez v. Holder*, 740 F.3d 902, 909 (4th Cir. 2014) (alterations in original) (quoting *A.T. Massey Coal Co. v. Barnhart*, 472 F.3d 148, 166 (4th Cir. 2006)), we may not defer

5

to the BIA's unpublished decision denying Sijapati relief. However, when an unpublished decision lacking precedential weight relies on a precedential decision to which *Chevron* deference can apply—like *Alyazji*—the precedential decision "controls to the extent that 'Congress has not directly addressed the precise question at issue' and 'the [BIA]'s answer is based on a permissible construction of the statute.'" *Hernandez v. Holder*, 783 F.3d 189, 192 (4th Cir. 2015) (alteration in original) (quoting *Chevron*, 467 U.S. at 843); *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999) (holding that the BIA's interpretation of an ambiguous statutory term should be accorded *Chevron* deference when the BIA "gives [the term] concrete meaning through a process of case-by-case adjudication" (internal quotation marks omitted) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448-49 (1987))).

Accordingly, we now consider whether *Alyazji*'s construction of "the date of admission" is entitled to deference under the familiar two-step inquiry set forth in *Chevron*. First, we consider "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If Congress' intent is clear, our inquiry comes to an end—we and the BIA "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. However, if the statute is silent or ambiguous as to the specific issue, we must then determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

## A.

"To resolve the initial inquiry under *Chevron*'s first step, we focus 'purely on statutory construction without according any weight to the agency's position.'" *Ojo v.*

6

*Lynch*, 813 F.3d 533, 539 (4th Cir. 2016) (quoting *Mylan Pharm., Inc. v. FDA*, 454 F.3d 270, 274 (4th Cir. 2006)). When interpreting a statute, we begin with the statute's plain language, *U.S. Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004), as "the plain language of the statute in question is . . . the most reliable indicator of Congressional intent," *Soliman v. Gonzales*, 419 F.3d 276, 281-82 (4th Cir. 2005).

In construing the statute's plain language, "we must consider the context in which the statutory words are used because '[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole.'" *Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006) (alteration in original) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)); *see also Soliman*, 419 F.3d at 282 ("We are obliged to look at the statutory language as a whole, construing each section in harmony with every other part or section, because 'Act[s] of Congress . . . should not be read as a series of unrelated and isolated provisions.'" (alteration in original) (quoting *Gustafson v. Alloyd Corp.*, 513 U.S. 561, 570 (1995))).

Section 237(a)(2)(A)(i) provides that "[a]ny alien who—(I) is convicted of a crime involving moral turpitude committed within five years . . . after *the date of admission*, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable." 8 U.S.C. § 1227(a)(2)(A)(i) (emphasis added). Although the INA does not define the phrase "the date of admission," the statute defines "admission" and "admitted" as, "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Sijapati urges us to end our analysis at *Chevron* step one, arguing that the plain language of the statute unambiguously establishes that "Congress intended '*the* date of admission' to correspond to the entry marking the *commencement* of an alien's current or most recent period of admission." Petitioner's Br. at 23. Sijapati further contends that Congress did not intend "aliens in [his] position—*i.e.*, those who leave and reenter the country during an *existing* period of admission—to reset the five-year clock . . . upon being readmitted to the United States." Petitioner's Reply Br. at 2. We disagree.

By using the definite article "the," Congress made clear that "[t]here can be only one 'the' date [of admission]" for the purposes of Section 237(a)(2)(A)(i). *Shivaraman v. Ashcroft*, 360 F.3d 1142, 1148 (9th Cir. 2004). Yet we have previously recognized that "all aliens are . . . deemed 'admitted' into the United States *whenever* entering the country from abroad . . . unless Congress otherwise exempts them elsewhere in the statute." *Othi v. Holder*, 734 F.3d 259, 267 (4th Cir. 2013) (emphasis added). Accordingly, unless otherwise exempted, Congress contemplated that aliens can have multiple admissions.

The INA is silent as to *which* admission should be used in determining an alien's removability under Section 237(a)(2)(A)(i) in the event an alien has multiple admissions, like Sijapati. Therefore, we find that the phrase "the date of admission" is ambiguous. *See Ojo*, 813 F.3d at 539 ("[T]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." (internal quotation marks omitted) (quoting *King v. Burwell*, 576 U.S. --, 135 S. Ct. 2480, 2489 (2015))). "Having found the statute to be ambiguous, we proceed to the next step under *Chevron* to determine whether

the [BIA's] interpretation is a 'permissible construction,' and not 'arbitrary, capricious, or manifestly contrary to the statute.'" *Regis v. Holder*, 769 F.3d 878, 883 (4th Cir. 2014) (quoting *Chevron*, 467 U.S. at 843-44).

## B.

In reviewing the BIA's interpretation under the second prong of *Chevron*, "[w]e generally give substantial deference to the BIA's precedential decisions interpreting the INA, because 'Congress conferred on the BIA decisionmaking power to decide such questions of law.'" *Amos v. Lynch*, 790 F.3d 512, 518 (4th Cir. 2015) (quoting *Martinez*, 740 F.3d at 909). In affording such deference, we "may not substitute [our] own construction of a statutory provision for a reasonable interpretation made by the [BIA]." *Chevron*, 467 U.S. at 844. Thus, we must determine whether *Alyazji* reasonably interpreted the meaning of "the date of admission" in Section 237(a)(2)(A)(i).

In *Alyazji*, the BIA paid special attention to the phrase "within five years after the date of admission," finding that the phrase's narrow language—"a definite article ('the') and a singular object ('date')"—"most naturally connote[d] a single date." 25 I. & N. Dec. at 405. After expressly "hold[ing] that the statutory phrase 'the date of admission' necessarily refers to a *single* date in relation to the pertinent offense," the BIA went on to consider the issue of "*which* date of admission applies when confronted with an alien who has been admitted more than once." *Id.* Concentrating on the statutory provision's "focus[] on admission plus presence," the BIA concluded that "the most natural reading of section 237(a)(2)(A)(i) is that the phrase 'the date of admission' refers to the date of

9

admission by virtue of which the alien was present in the United States when he committed his crime." *Id.* at 406.

In addition to interpreting the phrase at issue, the BIA also provided guidance regarding how "to ascertain an alien's deportability under section 237(a)(2)(A)(i) of the Act," instructing immigration courts to

> look first to the date when [the charged alien's] crime was committed. If, on that date, the alien was in the United States pursuant to an admission that occurred within the prior 5-year period, then he is deportable. Conversely, the alien is not deportable if he committed his offense more than 5 years after the date of the admission pursuant to which he was then in the United States.

*Id.*

We conclude that *Alyazji*'s construction of "the date of admission" in Section 237(a)(2)(A)(i) "is not 'arbitrary, capricious, or manifestly contrary to the statute.'" *Espinal-Andrades v. Holder*, 777 F.3d 163, 169 (4th Cir. 2015) (quoting *Chevron*, 467 U.S. at 844). In arriving at its interpretation, the BIA followed the normal principles of statutory construction, considering the statute's "overall design" and "the language of the [moral turpitude] provision itself." *Id.* (internal quotation marks omitted); *see Alyazji*, 25 I. & N. Dec. at 405-06 ("We must therefore arrive at a reasonable construction of the statute, taking into account the language and structure of the Act as a whole."). The BIA also explained how its interpretation was informed by its own precedent and judicial constructions of the statute. *Id.* at 406 nn.6, 8. Additionally, the BIA considered an alternative construction—treating the date of an alien's first admission as "the date of admission"—and reasonably concluded that such a construction "is not reconcilable with the language and purpose of the statute and would lead to 'peculiar consequences' when

10

applied to aliens who were briefly admitted many years ago (such as tourists, perhaps) and who remained outside the United States for decades thereafter before being readmitted." *Id.* at 406 n.6 (quoting *In re Shanu*, 23 I. & N. Dec. 754, 761 (B.I.A. 2005)).

Sijapati nonetheless argues that *Alyazji*'s interpretation of "the date of admission" is unreasonable because such a construction "would lead to a patently absurd result" whereby "aliens who commit a [crime involving moral turpitude] within five years of their initial admission, but who are not immediately arrested and convicted, could preemptively defeat a future charge of deportability . . . by simply leaving and reentering the country." Petitioner's Br. at 23-24. By contrast, the government asserts that, "in that scenario, if the alien seeking admission did not admit to committing the crime of moral turpitude . . . then the alien could be paroled in for prosecution and charged with inadmissibility . . . after the conviction." Respondent's Br. at 18. *Alyazji* did not address—much less decide—what constitutes "the date of admission" when an alien leaves and reenters the country after committing a crime of moral turpitude. And it is far from clear that *Alyazji*'s rule compels the result suggested by Sijapati. In such circumstances, we cannot say that *Alyazji*'s construction is unreasonable.

Moreover, even if "our ruling today [has] the unfortunate effect of rewarding [such] an alien," as Sijapati suggests, "[a]s a court, . . . we are obliged to give effect to the statutes as they are written and enacted." *Aremu v. Dep't of Homeland Sec.*, 450 F.3d 578, 583 n.6 (4th Cir. 2006); *see also La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 376 (1986) ("As we so often admonish, only Congress can rewrite [a] statute.").

Sijapati further contests the reasonableness of *Alyazji*'s interpretation of "the date of admission" on the grounds that it unfairly disadvantages nonimmigrants by "automatically resetting the five-year clock every time a nonimmigrant happen[s] to travel abroad[,] . . . subject[ing] aliens to deportability under [Section 237(a)(2)(A)(i)] decades after they beg[i]n residing in the United States." Petitioner's Reply Br. at 13. By contrast, the INA allows lawful permanent residents to make brief trips abroad without resetting their date of admission. *See* 8 U.S.C. 1101(a)(13)(C)(ii) ("An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien . . . has been absent from the United States for a continuous period in excess of 180 days . . . ."). However, Congress has time and time again made the decision to treat different classes of aliens differently. Here, Congress chose to provide nonimmigrants with lesser privileges than lawful permanent residents—a reasonable policy decision. *See Moore v. Ashcroft*, 251 F.3d 919, 925 (11th Cir. 2001) ("[D]ifferent treatment between lawful permanent residents and nonresidents acknowledges that a lawful resident enjoys greater rights than a nonimmigrant alien . . . ." (internal quotation marks omitted) (quoting *Umanzor-Lazo v. INS*, 178 F.3d 1286 (4th Cir. 1999) (per curiam) (unpublished))).

Because "[t]he BIA tethered its interpretation to traditional tools of statutory interpretation, and nothing leads this Court to conclude that its construction is

12

unreasonable," *Espinal-Andrades*, 777 F.3d at 169, we find that the BIA's interpretation of "the date of admission" in *Matter of Alyazji* is reasonable.[*]

III.

In conclusion, we hold that the BIA's interpretation of the statutory phrase "the date of admission" in *Alyazji* is entitled to *Chevron* deference. Accordingly, Sijapati's January 18, 2003, re-entry into the United States—"the date of the admission by virtue of which [Sijapati] was present in the United States when he committed his crime"— constituted "the date of admission" for purposes of Section 237(a)(2)(A)(i). *Alyazji*, 25 I. & N. Dec. at 406. Sijapati committed a crime involving moral turpitude on December 12, 2007, within five years of January 18, 2003. Therefore, we deny Sijapati's petition for review.

*PETITIONS FOR REVIEW DENIED*

---

[*] Following dismissal of his appeal, Sijapati filed with the BIA a motion for reconsideration, which relied on the same arguments Sijapati made in his dismissed appeal. The BIA denied Sijapati's motion for reconsideration, and Sijapati petitioned this Court to review that decision as well. Because Sijapati's motion for reconsideration asserted the same arguments as those raised in his first appeal, we deny that petition for review as well.